MINNIE B. CLODFELTER v. JOHN B. CARROLL.

(Filed 15 April, 1964.)

1. **Automobiles § 19;   Negligence § 10—**

The doctrine of last clear chance or discovered peril presupposes antecedent negligence on the part of the defendant and antecedent contributory

negligence on the part of the plaintiff, and is applicable only if defendant saw or, in the exercise of ordinary care, should have discovered plaintiff's position of peril subsequent the negligence and contributory negligence in time to have avoided the injury in the exercise of due care.

**2. Automobiles § 45—**

Evidence tending to show that plaintiff pedestrian was walking on her left side of the highway, facing traffic, near the edge of the hard surface, that the highway had a four foot shoulder, that plaintiff saw the lights of defendant's car approaching, that the right fender struck her before she got off the hard surface, and that when defendant stopped his car plaintiff was lying on the shoulder almost opposite the rear of the vehicle, without any evidence that defendant saw anything that should have put him on notice that plaintiff would not step off the hard surface and avoid injury, *is held* insufficient to raise the issue of last clear chance.

APPEAL by defendant from *McLaughlin, J.,* September 1963 Civil Session of DAVIDSON.

Civil action to recover damages for personal injuries allegedly caused by defendant's negligently striking plaintiff, a pedestrian, with his automobile.

Defendant in his answer denied negligence and conditionally pleaded plaintiff's contributory negligence as a bar to any recovery by her. Plaintiff, by reply, denied any contributory negligence on her part, but pleaded that if she were guilty of contributory negligence, then defendant by the exercise of reasonable care had the last clear chance to avoid injuring her after he discovered, or should have discovered, her perilous position and her incapacity to escape therefrom.

Both parties introduced evidence. The court submitted issues of (1) negligence, (2) contributory negligence, (3) last clear chance, and (4) damages. The jury answered the first three issues in the affirmative and awarded damages in the sum of $5,000. From a judgment in accord with the verdict, defendant appeals.

*Walser and Brinkley by Walter F. Brinkley for defendant appellant.*
*W. H. Steed for plaintiff appellee.*

PARKER, J.   Defendant assigns as error the submission to the jury of the third issue of last clear chance. This presents for determination the question as to whether there was sufficient evidence, considered in the light most favorable to plaintiff, to require submission of the issue of last clear chance to the jury. *Wade v. Sausage Co.,* 239 N.C. 524, 80 S.E. 2d 150.

The allegations of fact in the complaint, which are admitted in the answer to be true, and plaintiff's evidence show the following facts:

On 7 October 1961 plaintiff, a woman 75 years of age, attended the evening services conducted by Rev. L. W. Hill in a tent on the west side of Highway 109 about four miles south of the town of Thomasville. In the area where plaintiff was injured Highway 109 runs north and south and is a black-top, tar and gravel highway, the hard-surfaced part being about 21 feet wide with dirt shoulders on each side four to five feet wide. She lived on the Sullivan Road, which leads off Highway 109 to the west about 300 or 400 yards north of the revival tent. The highway between the revival tent and Sullivan Road is straight and practically level, and the view between these points is unobstructed.

When the religious services ended about 9 p.m., plaintiff went to Highway 109 to return to her home, and began walking north on its western side, which was its left side in the direction she was walking. She was walking with one foot on the pavement and one foot on the dirt shoulder. At the same time, defendant was driving his 1953 Chevrolet automobile south on Highway 109.

She testified on direct examination: "I saw a car coming after I got about 100 yards. I saw the lights of the car. I watched up and down both ways. The lights of the car were about 100 yards away when I first saw it. When I saw the lights on the car 100 yards away, I stepped off about two steps further so I was sure to be out of the way — short steps — I take short steps. At the time when I first saw it, the lights of the car, I was off then one foot just touching even with the edge of the pavement. As to how the car was coming toward me, from where I saw the car lights 100 yards away, in about two seconds they got there and got me. When I first saw the lights, I tried to move and I didn't get a step. I tried to move south. I tried to move off of the pavement. It was just a twinkling of an eye from the time I saw the lights until the car hit me. It was about two seconds. It hit me in the hip * * *. I never did hear its horn. There was nothing behind me at all at the time I was hit. There were not any lights of another car behind me and there wasn't no cars, only that truck on the other side of the road. It passed on a little piece on the other side when this car come along. In other words, this truck had passed me before I saw the headlights on the other car. The truck had come up from towards Denton and went towards Thomasville."

She testified on cross-examination: "At the time I first saw those lights I had both feet right on the edge of the pavement. I stepped over, was getting away. As soon as I saw the car coming with me standing there with both feet on the pavement, I stepped off right quickly. I was in a hurry to get away from there. I dodge automobiles if they ain't going too fast. * * * The right wheel hit me in the hip. It was

about two seconds from the time I saw the car first until it hit me. In that two seconds I was stepping off of the road." On cross-examination she testified to the effect that her testimony that the car was 100 yards away when she first saw it was based on what people who measured it told her.

After she was struck by the automobile, her body came to rest 18 inches to two feet off the hard-surfaced part of the highway on the left or western dirt shoulder, with her head to the south and her feet to the north.

Roy Byerly, a witness for plaintiff, testified in substance: He was standing in the yard of his home on Sullivan Road. He heard tires squalling down Highway 109. He got in his car, drove down the highway, and saw plaintiff lying on the shoulder of the highway about two feet off the hard-surfaced part of the road. He saw defendant standing there by his car. He testified, "His car was sitting there right beside of Mrs. Clodfelter as well as I remember." All four wheels of defendant's car were on the pavement. Behind his car and leading up to it he saw two unbroken skid marks. The westermost skid mark was at least two feet on the hard surface of the highway at all points he could see it.

Plaintiff's husband saw defendant at the door of the hospital in Thomasville. He testified in substance: Defendant talked to him a few words. He said he saw something from off a distance up the road at the Sullivan Road intersection, but he could not tell what it was. He could not tell what it was until he got closer. He said he was going tolerably fast, about 60 to 65 miles an hour. He said he was up the road a good distance when he first saw Mrs. Clodfelter. He said he did not know what it was until he got pretty close, and he threw on his brakes.

A few days after the collision, defendant saw plaintiff in the hospital in High Point. Plaintiff testified, "He [defendant] said he didn't see me."

Defendant's evidence is to this effect: He, with his wife as a passenger in the car, was driving his automobile in a southern direction on Highway 109 at a speed of 40 to 45 miles an hour from Thomasville toward his home in Denton. His car was in good working order. It was a fair night. In the area of the highway between Sullivan Road and the revival tent the highway is straight with "one dip." As he approached the place where the accident occurred, he met an automobile approaching him. He dimmed his lights. Just after the glare of the lights got off when the cars passed each other, he saw plaintiff standing 30 to 36 inches on the hard-surfaced part of the road facing him,

about 125 feet ahead of him. His lights on dim gave him a vision of 250 feet ahead. At that time another car was meeting him on the highway. When he saw plaintiff, he applied his brakes as quickly as he could and got as close to the center of the road as he could. His car slid forward and struck plaintiff standing on the pavement, where she was when he first saw her. When his car came to a stop, plaintiff was lying just a little ways behind his rear bumper. He had no chance to get out of the right lane of the highway to his left because of the approaching car, and if he had turned right on the shoulder he would have hit her, and also there was a slight fill there. He had no conversation with plaintiff's husband at the door of the hospital in Thomasville about the accident.

Defendant states in his brief that from plaintiff's evidence that he told her husband he was driving 60 or 65 miles an hour, an inference may be reasonably drawn that he was exceeding the maximum speed limit, and, therefore, he "will forego any contention that there is an absence of evidence of negligence on his part." There is ample evidence tending to show plaintiff was guilty of contributory negligence, and the jury by its answer to the second issue so found.

The doctrine of last clear chance presupposes antecedent negligence on the part of the defendant and antecedent contributory negligence on the part of the plaintiff, such as would, but for the application of this doctrine, defeat recovery. *McMillan v. Horne,* 259 N.C. 159, 130 S.E. 2d 52; *Barnes v. Horney,* 247 N.C. 495, 101 S.E. 2d 315; *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337; 65 C.J.S., Negligence, sec. 137, b.

The elements of the doctrine of last clear chance have been defined countless times by this and other courts and text writers, since its origin in the famous hobbled ass case of *Davies v. Mann,* 10 M. & W. 546, 152 Eng. Rep. 588 (1842). Unless all the necessary elements of the doctrine of last clear chance are present in order to bring the doctrine into play, the case is governed by the ordinary rules of negligence and contributory negligence. 65 C.J.S., Negligence, sec. 137, a. All the necessary elements of the doctrine are lucidly stated by Ervin, J., in *Wade v. Sausage Co., supra,* as follows: "Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to

escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him. [Citing 26 cases as authority.]"

*Mathis v. Marlow,* filed contemporaneously with this opinion, *post,* 636, 135 S.E. 2d 633, quotes from 65 C.J.S., Negligence, sec. 137, e, p. 775, as follows: "The doctrine contemplates a last 'clear' chance, not a last 'possible' chance, to avoid the accident; it must have been such a chance as would have enabled a reasonably prudent man in like position to have acted effectively."

Plaintiff, according to her testimony, was walking north on the western side of the highway, with one foot on the hard-surfaced part and one foot on the western shoulder, or with both feet on the hard-surfaced part, facing defendant's approaching automobile. She saw its approaching lights when it was, if not 100 yards away, at least some appreciable distance away from her. The road was straight and level, and there was no obstruction to her view ahead. According to defendant's testimony, when he first saw her about 125 feet ahead of him she was standing 30 to 36 inches on the hard-surfaced part of the road facing him. Considering the evidence in the light most favorable to plaintiff, there was, in our opinion, nothing in the situation to indicate to an ordinarily prudent person that plaintiff in the exercise of ordinary care for her own safety could not reasonably escape from the position of danger by stepping off the hard-surfaced part of the road onto the four or five foot dirt shoulder to her left so as to avoid being struck by his approaching car, or that she was oblivious of peril and apparently would not avail herself of the opportunity open to her for doing so before she suffered injury at his hands. Viewed in the light most favorable to plaintiff, the evidence fails to establish that at any time immediately prior to the accident she was helpless or unconscious of the impending danger, or incapable to escape from it. It is true she said, "I tried to move and I didn't get a step," but she also testified she had walked immediately prior to the accident 100 yards, and that "I stepped off right quickly. * * * I dodge automobiles if they ain't going too fast." If she tried to move and did not get a step, there is nothing in the evidence to indicate that defendant knew it, or by the exercise of ordinary care should have discovered it. Plaintiff in the full possession of her faculties merely unwittingly, carelessly, and in

disregard of her own safety failed to remove herself from the path of defendant's oncoming car, when she had full time and opportunity to do so and so avoid an obvious danger and the injuries she sustained. Under such circumstances, the doctrine of last clear chance is wholly inapplicable.

The trial court committed error in submitting the third issue to the jury. This issue will be stricken, which leaves the damage issue without support. The answer to the damage issue will be stricken.

In view of the disposition we have made of this appeal, we refrain from discussing or deciding the merits of defendant's assignment of error for failure to dismiss as in case of nonsuit. *Ingram v. Smoky Mountain Stages, Inc., supra.*

The case is remanded to the superior court of Davidson County to the end that judgment shall be entered on the jury's answers to the issues of negligence and contributory negligence denying recovery and dismissing the action. *Mathis v. Marlow, supra; McMillan v. Horne, supra; Ingram v. Smoky Mountain Stages, Inc., supra.*

Error and remanded.