**Christopher James CHARLES, Plaintiff,**

v.

**Patricia Anne DOUGAL and Robert Dougal, Defendants.**

No. 86–20–CIV–2.

United States District Court, E.D. North Carolina, Elizabeth City Division.

April 27, 1988.

M.H. Hood Ellis, Hornthal, Riley, Ellis & Maland, Elizabeth City, N.C., for plaintiff.

Gerald F. White, John H. Hall, Jr., White, Hall, Mullen, Brumsey & Small, Elizabeth City, N.C., for defendants.

## MEMORANDUM OPINION

BRITT, Chief Judge.

This matter is before the court on motion by defendants for summary judgment. The parties have fully briefed their contentions and, it appearing to the court that oral argument would not aid in the decisional process, the matter is ripe for ruling. The court finds that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. Accordingly, for the reasons

hereafter set forth, the motion for summary judgment will be granted.

### FACTUAL BACKGROUND

On Friday, 17 June 1983 at about 4:30 p.m. plaintiff, Christopher James Charles, was operating his Volkswagen automobile in a southerly direction on N.C. Highway No. 172 in Onslow County, North Carolina. Defendant Patricia Anne Dougal was operating a 1977 Chrysler automobile, owned jointly by defendant and her husband Robert Dougal, also in a southerly direction over N.C. Highway No. 172 following plaintiff's vehicle. Plaintiff pulled his vehicle onto the right, or west, shoulder of the road, got out of his vehicle and walked or ran into the roadway where he was struck by the Dougal vehicle.

N.C. Highway No. 172 is a two-lane, asphalt paved road which runs through the Camp LeJeune Marine Base in a generally northeasterly direction. At the point where the accident occurred, the road was 20 feet in width, consisting of two ten-foot lanes of travel with ten-foot shoulders on each side of the highway. The area where the accident occurred was rural, consisting entirely of woodsland, there being no dwellings or other structures in the vicinity. The road was straight and level, the weather clear, and the pavement dry. The posted speed limit was 55 miles per hour. Although the testimony of the witnesses vary as to the exact distance, there can be no doubt that the road was straight for a considerable distance in each direction from the scene of the accident. In fact, according to the testimony of the plaintiff, the road was straight for four miles north of the scene of the accident and "as far as you can see" south of the scene.

Plaintiff, a marine stationed at Camp LeJeune, had just left his duty station and was traveling to his home when, according to his testimony, some object blew out of the window of his automobile. Since he had been paid that day plaintiff feared that the object was a pay stub or something relating to his pay. According to his testimony, he then slowed his vehicle down, made a U-turn on the highway and started back in the direction from which he had come, pulled over to the shoulder of the road and got out of his car to retrieve the unknown item. According to the testimony of the defendant, who was a nurse stationed at Camp LeJeune, she first saw the Volkswagen automobile of plaintiff as it was proceeding southerly in front of her.

There were two eye-witnesses to the accident, Michael Wesley Shong, and William Mackey, members of the United States Marine Corps, who were traveling in Shong's 1969 Plymouth automobile in a northerly direction.

The four eye-witnesses, in their depositions, recounted the events immediately preceeding the accident, and the accident itself, as follows:

(a) *Christopher James Charles:*

[A]ll of a sudden, something blew out the window.... So I wasn't going that fast. I was going maybe forty miles per hour. So I immediately checked the directional, pulled off to the right side of the road, okay, looked front, then looked to my rearview mirror. I saw there was no cars in either direction and proceeded to make a U-turn.

I made the U-turn, immediately turned off the road—in other words, turned around, immediately turned off directionally, using my directionals, pulled off to the shoulder of the road, okay. Shut off my car. Okay Put the emergency brake on. Glanced in my rearview mirror. *And also assuming from glancing in my rearview mirror and looking both ways before my directional, I assumed no cars were coming.* So I stepped out of my vehicle, proceeded to cross the street at a diagonal direction since the piece of paper, or whatever it was, blew out beforehand. I went ahead towards that direction. Walked, I would say, just about in the middle, a little more in the road and I got struck. I didn't see her coming or anything.

(Deposition p. 22).

When I got out of the car, *I just glanced in my rearview mirror while I was opening the door. I did not see anything so I assumed it was clear,* and I

**510**

proceeded to go across the street with my back towards it.

(Deposition p. 27) (emphasis added).

In response to the question, "I take it you didn't look any more in either direction?" plaintiff answered, "No." (Deposition, p. 27).

(b) *Patricia Anne Dougal:*

I remember seeing a yellow Volkswagen in front of me. I suppose we were traveling at about the same speed because the distance between the cars really didn't change that much. And I would say that I was approximately one to two city blocks behind him. We had been traveling for about a mile and a half to two miles on 172 when he pulled off onto the right shoulder of the road. I remember letting up on the accelerator a little bit at that point and continuing on. When I got much closer to the car—and here it is going to have to be just a guesstimate, because I wasn't consciously looking at how far away I was from the car, but maybe six, seven car lengths away perhaps, somewhere in that area—the driver's door opened, a young man stepped out, closed the door and ran across the street. All of that happened very quickly. When I saw the car door open and somebody step out, I moved my car over to the center line of the road and slowed down a little bit more and continued on. When he ran into the street, I remember grabbing ahold of the steering wheel, slamming on the brake, and yelling, no, and that happened at the same point of impact, he was that close to the car when he dashed into the street. I hit him, he rolled over the car. I immediately pulled over onto the shoulder and then ran to him. [When I first observed his car I was] traveling 55 miles an hour.

(Deposition pp. 26–27).

Ms. Dougal also testified in response to questions from counsel that she took her foot off the accelerator when she saw the Volkswagen pull onto the shoulder (Deposition p. 34); that when plaintiff got out of his car he ran into the highway (Deposition p. 38); she never took her eyes off the plaintiff (Deposition p. 41); that when she was aware of him running into the road she "stood on the brakes" (Deposition p. 45); and, that the right headlight of her car struck the plaintiff (Deposition p. 42). She also estimated that she was between 300 and 600 feet behind Charles when he pulled off the road. (Deposition pp. 26–30, 36).

(c) *Michael Wesley Shong:*

When I was going north, there was a car followed by another one in the distance, and it—one car pulled over suddenly, and he jumped out, started to run across the road.... [At that time the other car was about 100 to 200 feet behind him]

(Deposition p. 9).

He suddenly jumped out and ran across the road. Started to run across the road.

(Deposition p. 11).

[The Dougal car] was slowing down. And then, you know, put the brakes on, and the car dips down....

(Deposition p. 14).

[At the time the dipping first occurred the Dougal car was] about one or two car lengths from Charles.

(Deposition p. 14).

I had to swerve over to the east, to the right and put the brakes on. And I swerved into the—onto the shoulder to get by him.

(Deposition p. 16). Shong also estimated that Dougal was from 100 to 200 feet from Charles when Charles entered the highway. (Deposition p. 40).

(d) *William L. Mackey:*

I was a passenger in a car driven by Michael Shong. We were headed northbound.

(Deposition p. 8).

What I seen myself was a pedestrian running eastbound across the highway. He had taken approximately three steps and was running in front of a car. The car had already swerved towards the center of the road and at the time of impact she had already started anchoring her brakes. And the pedestrian flew into the air after colliding with the car and around the headlights of the driver's side —or excuse me—the passenger side of the vehicle, the southbound vehicle, and

bounced off the windshield and flew into the air and landed in the highway on the northbound side of the highway, approximately six inches from the white line.... On the eastbound side.

(Deposition p. 12).

According to the report of State Trooper C.A. Bennett, the investigating officer, the Dougal vehicle traveled 110 feet after the impact before coming to a stop on the shoulder of the road.

## CONTENTIONS

Plaintiff contends that defendant Patricia Anne Dougal was negligent in that she failed to drive her automobile at a speed that was reasonable and prudent under the conditions existing, that she failed to keep a reasonable lookout and proper control so as to avoid hitting plaintiff, that she failed to reduce her speed and apply her brakes to avoid hitting plaintiff when she observed him in close proximity to the highway and subsequently on the highway, and in failing to sound her horn to warn of her approach. Plaintiff also contends that even if he was guilty of contributory negligence, he is entitled to recover under the theory of last clear chance. Defendants, on the other hand, contend that the facts fail to show any negligence on the part of Patricia Anne Dougal, that the facts show contributory negligence on the part of plaintiff as a matter of law, and that the doctrine of last clear chance is inapplicable.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure in Section (c) provides that a motion for summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

From the evidence set forth above, it is clear that there is no genuine issue as to any material fact. Those facts clearly show that plaintiff, while traveling down

an open highway on a clear day, pulled his vehicle onto the shoulder of the road, got out of the vehicle, failed to look in either direction, and ran into the highway in the face of vehicular traffic approaching from each direction, and that he was struck by defendant Patricia Anne Dougal who was operating her vehicle within the lawful speed limit and who slowed her vehicle down when she observed plaintiff pull off the road and swerved and hit her brakes in an attempt to miss him when he darted in front of her.

Under the law of the State of North Carolina negligence is not presumed from the mere fact of injury. In order to recover in an action based on negligence plaintiff must show that defendant failed to exercise proper care in the performance of some legal duty owed to plaintiff and that such negligent breach of duty was the proximate cause of plaintiff's injury. *Tysinger v. Coble Dairy Products*, 225 N.C. 717, 36 S.E.2d 246 (1945).

Likewise, under the law of North Carolina, plaintiff was under a duty to exercise due care for his own safety. And the failure to exercise that care, is contributory negligence. *See Leach v. Varley*, 211 N.C. 207, 189 S.E. 636 (1937).

N.C.GEN.STAT. 20–174(a) provides "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

Plaintiff's memorandum contains this correct statement of the law of North Carolina: "It is the duty of pedestrians to look before starting across a highway, and in the exercise of reasonable care for their own safety, to keep a timely lookout for approaching traffic to see what should have been seen and could have been seen if they had looked before starting across the highway. *Rosser v. Smith*, 260 N.C. 647, 133 S.E.2d 499 (1963)."

■ It is abundantly clear from the uncontradicted evidence that plaintiff failed to look before starting across the highway, failed to exercise reasonable care for his

own safety, failed to keep a timely lookout for approaching traffic, and failed to see what should have been seen and could have been seen if he had looked before starting across the highway. Thus, even if there were any showing of actual negligence on the part of defendant, plaintiff was clearly contributorily negligent.

Plaintiff relies on *Williams v. Henderson*, 230 N.C. 707, 55 S.E.2d 462 (1949) and *Carter v. Poole*, 66 N.C.App. 143, 310 S.E.2d 617 (1984), *disc. rev. denied*, 310 N.C. 624, 315 S.E.2d 689 (1984). However, those cases are easily distinguishable from this. In each of the cases relied on by plaintiff, a pedestrian had crossed a public highway to a mailbox and was in the process of returning across a highway when struck by defendant's vehicle. The North Carolina courts in those cases placed great reliance on the fact that in each case the defendant driver could clearly see the pedestrian at the mailbox, apparently oblivious to the approach of the vehicle. It also is fairly inferable from the decisions that the North Carolina courts consider such circumstances to be special hazards in giving rise to a duty on the part of an approaching motorist to exercise greater caution and blow his horn. Additionally, in *Carter* there was clearly an issue of last clear chance as the driver had a view of the pedestrian some 1200 to 1500 feet before the collision.

In the present case, Charles was, until his exit from the automobile, a motorist. Thus, he became a pedestrian only seconds before impact. There was absolutely nothing to put Dougal on notice that Charles would suddenly open his door, jump out of his car, and dash into her path. It can reasonably be anticipated that a pedestrian who has crossed an open highway to get to a mailbox will, after checking the mailbox, return across that same highway. A driver is not under a duty however, to anticipate that the driver of a preceding car will suddenly pull to the shoulder of the road, open the door, and jump out in front of her.

The time available to Dougal to respond to the conditions confronting her can be fairly estimated. Plaintiff in his memorandum in opposition to the defendants' motion for summary judgment argues that considered in the light most favorable to him, the evidence shows that Dougal was 300 to 600 feet behind Charles when he pulled off. Dougal, traveling at 55 miles per hour as she had every legal right to do, would traverse that distance in between four and eight seconds, depending upon the actual distance. Plaintiff further contends that the evidence when considered in the light most favorable to him, would show that Dougal was as much as 200 feet from Charles when he entered the highway. This, of course, is based on the deposition testimony of Shong who actually testified that the distance was from 100 to 200 feet. Under the most liberal interpretation of this testimony, Dougal would have traversed that distance in less than three seconds.

The North Carolina case most factually analogous is *McCullough v. Amoco Oil Co.*, 310 N.C. 452, 312 S.E.2d 417 (1984). In that case plaintiff, a student, parked his vehicle across a highway from a school and was running across the highway to get to his school when he was struck by the defendant vehicle. There was no evidence of any improper driving on behalf of the defendant driver nor any indication that the plaintiff's position of peril could have been reasonably anticipated. The Supreme Court of North Carolina, reversing the Court of Appeals, held that summary judgment was proper.

■ Finally, plaintiff relies on the North Carolina doctrine of last clear chance which is expressed in the case of *Clodfelter v. Carroll*, 261 N.C. 630, 634–35, 135 S.E.2d 636, 639 (1964), as containing four elements:

(1) that the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care;

(2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands;

(3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and

(4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him.

Assuming *arguendo* that a jury could find the first two elements above set forth, it is clear that defendant Dougal did not have the time and means to avoid the injury as required in paragraph (3) or that she failed to use available time and means to avoid the injury as required in paragraph (4). Thus the doctrine of last clear chance is of no assistance to the plaintiff.

The court therefore holds that there is no genuine issue as to any material fact and that all the facts disclose that defendant Patricia Dougal was not negligent, that plaintiff was contributorily negligent and that the doctrine of last clear chance has no application. In *McCullough,* the Supreme Court of North Carolina, through Justice Meyer, said:

[T]he evidence is uncontraverted that plaintiff eventually came into [the driver's] view, left the median, entered the westbound lane of the southern branch, and ran 'into the immediate path of the tanker.' Under these circumstances, [the driver] could not have reasonably been expected to anticipate plaintiff's movement, thereby avoiding the accident.

The trial judge correctly concluded that there was no genuine issue as to any material fact. Defendant is entitled to summary judgment on the issue of negligence. Furthermore, assuming *arguendo* that sufficient evidence of [the driver's] negligence could be found, plaintiff's contributory negligence appears without contradiction. [citations omitted.] Again assuming the driver's negligence *arguendo* and the plaintiff's contributory negligence ... there has been no forecast of evidence of a last clear chance on the part of the defendant's driver to avoid the collision.

*McCullough v. Amoco Oil Co.,* 310 N.C. at 459, 312 S.E.2d at 421.

The motion for summary judgment is allowed. An appropriate order will issue.