IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-505

Filed 17 December 2024

Mecklenburg County, No. 20-CVS-10627

RICHARD DEVAYNE CREECH, Plaintiff,

v.

TOWN OF CORNELIUS, ELECTRICITIES OF NORTH CAROLINA, INC., and IAN CHARLES KENNER, Defendants.

Appeal by Defendants from judgment entered 19 September 2023 by Judge George Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 November 2024.

> *Maginnis Howard, by Charles G. Monnett III and Andrew S. O'Hara, for Plaintiff-Appellee.*
>
> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Linda Stephens, and McAngus Goudelock & Courie PLLC, by John P. Barringer and Meredith Cushing, for Defendants-Appellants.*

COLLINS, Judge.

This appeal arises from an automobile accident where the driver of a truck hit and injured a pedestrian in a parking lot. The Town of Cornelius, Electricities of North Carolina, Inc., and Ian Charles Kenner (collectively "Defendants") appeal from the trial court's judgment entered upon a jury verdict finding the driver of the truck, Kenner, negligent in causing injury to the pedestrian, Plaintiff Richard Devayne Creech. Defendants argue that the trial court erred by submitting the issue of last

clear chance to the jury and by refusing to give their requested special jury instruction on N.C. Gen. Stat. § 97-10.2(j), which allows the trial court discretion to determine the amount of an employer's subrogation lien for the payment of compensation in workers' compensation cases. Because there was sufficient evidence to submit the issue of last clear chance to the jury and the trial court did not err by declining to instruct the jury on the trial court's discretionary authority under N.C. Gen. Stat. § 97-10.2(j), we affirm the trial court's judgment.

## I. Background

In the early morning hours of 6 September 2017, Plaintiff was working as a morning news reporter for a local television station in Charlotte, North Carolina. Plaintiff had traveled to Huntersville, North Carolina, to report on a story. Standing in front of the Huntersville town hall building with a cameraman, Plaintiff recorded several "live shots" of the story.

After recording a shot at 6:06 a.m., Plaintiff walked across the street to a convenience store. When he left the convenience store, Plaintiff walked back across the street, past the town hall building, and toward the building's parking lot. The town hall building was to Plaintiff's left, and after passing the building, he turned left into the parking lot. Plaintiff testified that he wanted to walk around the parking lot "to continue to walk, just take steps."

Plaintiff walked into the parking lot at approximately 6:15 a.m. While listening to a news story on his phone, he walked along the white parking lines toward

the back of the parking lot.  When he reached the back of the parking lot, Plaintiff turned around and started walking back along the same white parking lines toward the entrance.  At this point, there were no cars in the parking lot.

As Plaintiff was walking back toward the entrance, Kenner turned right into the town hall parking lot in his truck.[1]  The truck's headlights "shined right on [Plaintiff's] face" as it turned into the lot.  Plaintiff saw the truck enter the parking lot and thought the truck driver saw him.  Kenner drove the truck toward the back of the parking lot, in the opposite direction Plaintiff was walking.  When Kenner reached the rear of the parking lot, he made a U-turn and began driving toward Plaintiff.  As Kenner prepared to check a mailbox located next to the building's entrance, he drove the truck to the far right side of the lot, along the white parking lines closest to the building.  Plaintiff recounted the following:

> As I was walking, I remember looking at the truck and seeing it as it -- the bed of the truck go by.  And then, out of my peripheral, it felt like something was happening.  I really couldn't tell.  And then as I looked, it started to turn and my thought was, "It's getting close enough," and before I could get that complete thought out, I was turning and it hit me.

The front of Kenner's truck hit Plaintiff in the legs and knocked him over. Kenner, realizing he had hit something but not knowing what, put the truck in reverse and backed over Plaintiff's leg.  Approximately twelve seconds passed from

---

[1] Kenner was employed by Electricities of North Carolina, Inc., and the Town of Cornelius owned the truck Kenner was driving.

the time Kenner turned into the parking lot to the time he first struck Plaintiff with his truck. Plaintiff was transported by ambulance to the hospital, where he spent several days. Plaintiff sustained a fractured tibia which required surgery and extensive physical rehabilitation.

Plaintiff commenced this action on 17 August 2020 by filing a complaint alleging negligence. The case came for trial on 14 August 2023. The jury found that Kenner's negligence caused Plaintiff's injuries, Plaintiff was contributorily negligent, and Kenner had the last clear chance to avoid the collision. The jury awarded Plaintiff $760,035.44. The trial court entered a judgment upon the jury's verdict. Defendants appeal.

## II.    Discussion

### A. Last Clear Chance Instruction

Defendants first argue that the trial court erred by submitting a last clear chance instruction to the jury.

"The issue of last clear chance must be submitted to the jury if the evidence, viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine." *Bass v. Johnson*, 149 N.C. App. 152, 158 (2002) (citation omitted). Whether the evidence is sufficient to require such an instruction depends upon the facts of each individual case. *Wray v. Hughes*, 44 N.C. App. 678, 682 (1980). We review the sufficiency of the evidence to support the instruction de novo. *See Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 341-42 (2008)

(reviewing de novo the sufficiency of the evidence to withstand a motion for a directed verdict); *see also State v. Chevallier*, 264 N.C. App. 204, 214 (2019) (stating in a criminal context that "[w]e review *de novo* properly preserved sufficiency-of-the-evidence challenges to jury instructions") (citation omitted); *see also Bass*, 149 N.C. App. at 158-59 (reviewing as a matter of law the sufficiency of the evidence to support an instruction on last clear chance).

The last clear chance doctrine "allows a contributorily negligent plaintiff to recover where the defendant's negligence in failing to avoid the accident introduces a new element into the case, which intervenes between the plaintiff's negligence and the injury and becomes the direct and proximate cause of the accident." *Outlaw v. Johnson*, 190 N.C. App. 233, 238 (2008) (quotation marks, brackets, and citation omitted). For cases involving a contributorily negligent pedestrian injured by the driver of a motor vehicle, there must be sufficient evidence of each of the following four elements:

> (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that

reason struck and injured him.

*Clodfelter v. Carroll*, 261 N.C. 630, 634-35 (1964) (citations omitted).

Defendants concede that sufficient evidence was presented to support the second element—that Kenner knew, or by the exercise of reasonable care could have discovered, Plaintiff's perilous position and his incapacity to escape from it before Plaintiff suffered injury at Kenner's hands. *See id.* Similarly, Defendants make no argument as to the fourth element—that Kenner negligently failed to use the available time and means to avoid injury to Plaintiff, and for that reason struck and injured Plaintiff. *Id.* Accordingly, only the first and third elements are at issue here.

The first element requires sufficient evidence that the plaintiff's "prior contributory negligence had placed him in a position from which he was powerless to extricate himself." *Nealy v. Green*, 139 N.C. App. 500, 505 (2000) (brackets and citation omitted). "The situation is not one of true helplessness, as the injured party is in a position to escape. Rather, the negligence consists of failure to pay attention to one's surroundings and discover his own peril." *Williams v. Odell*, 90 N.C. App. 699, 704 (1988) (citations omitted).

"Cases discussing this first element have consistently distinguished between situations in which the injured pedestrian was facing oncoming traffic and those in which the pedestrian was not." *Nealy*, 139 N.C. App. at 505. Accordingly, our courts have determined that the last clear chance instruction is not warranted when there is evidence showing that an injured pedestrian was facing oncoming traffic and could

have extricated himself from his dangerous position.  *See Williams*, 90 N.C. App. at 702-04 (the pedestrian was facing oncoming traffic as she was leaning against the rear of her vehicle, parked on the shoulder of highway); *Clodfelter*, 261 N.C. at 635 (the pedestrian was walking on the side of the highway, facing the defendant's approaching automobile).  On the other hand, our courts have determined that "evidence tending to show the injured pedestrian either was not facing oncoming traffic or did not see the approaching vehicle" is sufficient to satisfy the first element. *Nealy*, 139 N.C. App. at 505-06 (the pedestrian "was walking with his back to traffic and did not turn when defendant's vehicle approached"); *see also Watson v. White*, 309 N.C. 498, 505 (1983) (the pedestrian was crossing a highway and did not see the defendant's vehicle approach); *Williams v. Spell*, 51 N.C. App. 134, 136 (1981) (the pedestrian, who was walking with his back to traffic when injured, "placed himself in a position of helpless peril"); *Outlaw*, 190 N.C. App. at 240  (the pedestrian did not see the vehicle approaching).

Here, the evidence presented indicates that Plaintiff was put in a perilous position when Kenner made the U-turn and started driving the truck back toward Plaintiff.  At that point, Plaintiff was walking with his back to the truck and, "by failing to pay attention to his surroundings and discover his own peril," placed himself in a dangerous position of which he did not realize until it was too late.  *Nealy*, 139 N.C. App. at 506 (quotation marks, brackets, and citations omitted).

Defendants contend that Plaintiff, through the exercise of reasonable care,

could have escaped from his position of peril by getting out of the parking lot as soon as he saw the truck turn in. At that point, however, Plaintiff did not believe he was in danger because the truck's headlights had shined on him before it began traveling in the direction opposite of Plaintiff. *See id.* at 506 (reasoning that "the pedestrian who did not apprehend imminent danger could not reasonably have been expected to act to avoid injury") (quotation marks and citations omitted). Plaintiff did not see Kenner turn the truck around and thus did not see the truck approaching him in time to remove himself from the dangerous situation. When viewed in the light most favorable to Plaintiff, the evidence was sufficient to support a reasonable inference that Plaintiff "placed himself in a position of peril from which he could not escape by the exercise of reasonable care[.]" *Clodfelter*, 261 N.C. at 634 (citations omitted).

The third element requires sufficient evidence that "the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it[.]" *Id.* at 635. This element is established where "there was an appreciable interval of time between [the] plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence." *Mathis v. Marlow*, 261 N.C. 636, 639 (1964) (citation omitted). It "must have been such a chance as would have enabled a reasonably prudent man in like position to have acted effectively." *Id.* (quotation marks and citation omitted). Our courts have emphasized that even in

situations where the defendant-motorist never saw the endangered pedestrian, a last clear chance instruction is warranted when there is evidence showing that the defendant-motorist had an unobstructed view of the pedestrian and thus should have observed the pedestrian in time to avoid injury. *See Earle v. Wyrick*, 286 N.C. 175, 178 (1974) (defendant-motorist had a clear and unobstructed view of pedestrian walking in the street at night although the defendant saw pedestrian "only a split second before the impact"); *see also Exum v. Boyles*, 272 N.C. 567, 577 (1968) (although the defendant-motorist did not actually see the pedestrian until it was too late to avoid injury, had he maintained a lookout in the direction of his travel, the defendant could have observed the pedestrian's perilous position in time to avoid striking him).

Here, the evidence indicates that Kenner turned into an empty parking lot with his headlights on, Plaintiff was in his plain view, and approximately twelve seconds elapsed between the time Kenner turned in and the time he first struck Plaintiff. Viewed in the light most favorable to Plaintiff, the evidence indicates that had Kenner maintained a lookout in the direction of his travel, he could have observed Plaintiff's presence in the parking lot and had ample time to avoid striking him.

Kenner also had the means to avoid injury. At the time of the collision, the parking lot was empty. Had Kenner merely swerved to his left or right, he could have avoided hitting Plaintiff and would not have put anyone else in danger. Accordingly, when viewed in the light most favorable to Plaintiff, the evidence was sufficient to

support a reasonable inference that Kenner "had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it[.]" *Clodfelter*, 261 N.C. at 635 (citations omitted).

As Plaintiff presented sufficient evidence supporting a reasonable inference of each element of the last clear chance doctrine, the trial court did not err by submitting the issue to the jury.

**B. Special Jury Instruction**

Defendants next argue that the trial court erred by refusing to include in its charge to the jury their requested special instruction on N.C. Gen. Stat. § 97-10.2(j), which allows the trial court discretion to determine the amount of an employer's subrogation lien for the payment of compensation in workers' compensation cases.

A trial court has "wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause." *Murrow v. Daniels*, 321 N.C. 494, 499-500 (1988) (quotation marks and citation omitted). A trial court's charge to the jury is to be reviewed "contextually and in its entirety." *Bass*, 149 N.C. App. at 160 (citation omitted). The trial court's refusal to give a requested charge "is not error where the instructions fairly represent the issues" and will not be overturned absent an abuse of discretion. *Osetek v. Jeremiah*, 174 N.C. App. 438, 440 (2005) (citations omitted).

In this case, two specific portions of N.C. Gen. Stat. § 97-10.2 were at issue in the jury instruction on workers' compensation:

> (e) The amount of compensation and other benefits paid or payable on account of such injury or death shall be admissible in evidence in any proceeding against the third party. In the event that said amount of compensation and other benefits is introduced in such a proceeding the court *shall* instruct the jury that said amount will be deducted by the court from any amount of damages awarded to the plaintiff.
>
> . . . .
>
> (j) Notwithstanding any other subsection in this section, in the event that a judgment is obtained by the employee in an action against a third party, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose or where the injured employee resides, or to a presiding judge of either district, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, *in his discretion*, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, and the amount of cost of the third-party litigation to be shared between the employee and the employer. The judge shall consider the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien.

N.C. Gen. Stat. § 97-10.2(e), (j) (2023) (emphasis added).

Defendants concede that their argument regarding this issue mirrors the argument advanced, and rejected, in *Peay v. S. & D. Coffee, Inc.*, 278 N.C. App. 605 (2021). Although *Peay* is an unpublished opinion and is not controlling legal authority, N.C. R. App. P. 30(e)(3), we find its reasoning persuasive.

Here, the trial court instructed the jury that the amount of workers' compensation benefits already received by Plaintiff was given to the jury "for the sole purpose of informing [them] that such amount will be deducted by the [c]ourt from any amount of damages you award the Plaintiff." The trial court further instructed that "[u]nder North Carolina law, the [c]ourt is required to deduct this amount from any amount of damages" the jury awards. This instruction was a correct statement of the law. *See* N.C. Gen. Stat. § 97-10.2(e) ("In the event that said amount of compensation and other benefits is introduced in such a proceeding the court shall instruct the jury that said amount will be deducted by the court from any amount of damages awarded to the plaintiff.")

Defendants requested the trial court also instruct the jury on the language of subsection (j), so that the jury may be informed of the law giving a trial court discretion to alter the workers' compensation award. Denying Defendants' request, the trial court emphasized the discretionary nature of the language of subsection (j). The court reasoned that it "kind of tracks with, if it's something that the judge has discretion on, then . . . I'm not going to allow the attorneys to try to telegraph what that would be, because it's not certain, and it's confusing to the jury." We agree with

the trial court's reasoning.

Subsection (j) makes clear that the trial court has discretion in determining whether to alter the workers' compensation award. *Id.* § 97-10.2(j) ("[T]he judge shall determine, in his discretion, the amount, if any, of the employer's lien."). This action does not occur automatically; rather, a party must apply to the resident superior court judge in the appropriate county. *Id.* Accordingly, it was not an incorrect statement of the law for the trial court to omit subsection (j) from its jury instruction. We therefore conclude that the trial court did not err by denying Defendants' requested special instruction.

### III.    Conclusion

Because Plaintiff presented sufficient evidence supporting a reasonable inference of each element of the last clear chance doctrine, the trial court did not err by submitting the issue to the jury. Furthermore, the trial court did not err by denying Defendants' request for a special instruction on N.C. Gen. Stat. § 97-10.2(j). We affirm the trial court's judgment.

AFFIRMED.

Judges ARROWOOD and HAMPSON concur.